UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

PAUL GOLDMAN,

        Plaintiff,

v.

BCBSM FOUNDATION d/b/a
BLUE CROSS BLUE SHIED OF
MICHIGAN FOUNDATION a/k/a
BLUE CROSS BLUE SHIELD OF
MICHIGAN,

        Defendant.
_____/

Case No. 11-14043

HON. AVERN COHN

### MEMORANDUM AND ORDER
### GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION TO DISMISS
### (Doc. 7)

I.  Introduction

This is a case seeking benefits under a plan governed by the Employee Retirement Income Security Act, ERISA, 29 U.S.C. § 1132(a)(1)(B).  Plaintiff Paul Goldman is suing defendant Blue Cross Blue Shield of Michigan (BCBSM) claiming that it has wrongfully failed to pay for his prescription for "Omnitrope Vial."[1]  The complaint claims (I) violation of ERISA, (II) breach of contract, and (III) breach of settlement agreement.  As will be explained, this is the second lawsuit between the parties over

---

[1] While plaintiff uses the term "Omnitrope Vial," the "vial" refers to the method of dosage, not the name of the drug.  As such, the Court refers to the drug as Omnitrope, which is used to treat a hormone condition.  See page 7.

plaintiff's claim for Omnitrope. The prior case, which was assigned to the undersigned, settled.

Before the Court is BCBSM's motion to dismiss on the grounds that (1) plaintiff has failed to exhaust his administrative remedies as to his ERISA claim under Count I, and (2) Counts I and III are preempted.

For the reasons that follow, the motion is GRANTED IN PART AND DENIED IN PART. Count I continues, subject to amendment. Count II is DISMISSED. Count III is DISMISSED WITHOUT PREJUDICE.

## II. Background

Plaintiff Paul Goldman (Goldman) is an employee of Paul H. Goldman Associates, CPA, P.C. As an employee, Goldman participates in an employer medical plan, which is administered by BCBSM and includes prescription drug coverage. The plan is alleged to be governed by ERISA.

At some point prior to November 2010, Goldman submitted a claim for Omnitrope, a prescription drug. BCBSM denied the claim.

On November 19, 2010, plaintiff then filed a complaint against BCBSM. Goldman v. BCBSM, 10-14608 (E.D. Mich.) (Goldman I). The complaint claimed (I) violation of ERISA, and (II) breach of contract. The parties settled without any motion practice on or about May 11, 2011. On June 9, 2011, the Court entered a Consent Order of Dismissal. Doc. 11 in Goldman I.

The settlement agreement was not filed in Goldman I. However, Goldman has submitted a portion of it in his response to BCBSM's motion to dismiss. The settlement agreement provides in relevant part as follows:

1. BCBSM shall pay to Goldman the sum of thirty-five thousand dollars ($35,000.00) in full and complete settlement of the dispute over the payment of certain prescription claims made by Goldman through September 7, 2010 only.
2. For the payment of other/future prescription claims, BCBSM will follow the parameters set forth in Goldman's preferred Rx Program Certificate, as amended ("the insurance contract"). If the insurance contract is ever amended or superceded, the amended certificate/contract or superceding certificate/contract shall govern the payment of future prescription claims. Prescription claims shall be paid as required by the contract and/or applicable law thereto. This shall not be construed as a guarantee that claims for the certain prescribed drug shall be approved.

At some point after the settlement agreement, Goldman submitted another claim to BCBSM for Omnitrope. BCBSM denied the claim on June 16, 2011. On September 15, 2011, Goldman filed this second action against BCBSM.

### III. Motion to Dismiss

A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) tests the sufficiency of a complaint. To survive a Rule 12(b)(6) motion to dismiss, the complaint's "factual allegations must be enough to raise a right to relief above the speculative level on the assumption that all of the allegations in the complaint are true." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 545 (2007). See also Ass'n of Cleveland Fire Fighters v. City of Cleveland, Ohio, 502 F.3d 545, 548 (6th Cir.2007). The court is "not bound to accept as true a legal conclusion couched as a factual allegation." Ashcroft v. Iqbal, ___ U.S. ___, 129 S.Ct. 1937, 1950 (internal quotation marks and citation omitted). Moreover, "[o]nly a complaint that states a plausible claim for relief survives a motion to dismiss." Id. Thus, "a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth. While legal conclusions can

provide the framework of a complaint, they must be supported by factual allegations. When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." Id. In sum, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim for relief that is plausible on its face." Id. at 1949 (internal quotation marks and citation omitted).

IV.  Analysis

A.  Exhaustion of Administrative Remedies

1.  The Law on Exhaustion

The Sixth Circuit has repeatedly held that, although ERISA does not explicitly require exhaustion of administrative remedies, "[t]he administrative scheme of ERISA requires a participant to exhaust his or her administrative remedies prior to commencing suit in federal court." Costantino v. TRW, Inc., 13 F.3d 969, 974 (6th Cir. 1994) (quoting Miller v. Metro. Life Ins. Co., 925 F.2d 979, 986 (6th Cir. 1991)).  This implicit requirement is not only consistent with ERISA's legislative history but with the statute itself, which mandates that every employee benefit plan "afford a reasonable opportunity to any participant whose claim for benefits has been denied for a full and fair review by the appropriate named fiduciary of the decision denying the claim." Id. (citing 29 U.S.C. § 1133(2)).

The purposes of administrative exhaustion are to minimize the number of frivolous ERISA lawsuits; promote the consistent treatment of benefit claims; provide a nonadversarial dispute resolution process; and decrease the cost and time of claims settlement.  Id. at 975 (citing Makar v. Health Care Corp. of the Mid–Atlantic (CareFirst),

4

872 F.2d 80, 83 (4th Cir. 1989)).  The exhaustion requirement, therefore, enables plan fiduciaries to efficiently manage their funds, correct their errors, interpret plan provisions, and assemble a factual record that will assist a court in reviewing any decisions.  Id. The application of the administrative exhaustion requirement is committed to the sound discretion of the district court and, thus, cannot be disturbed on appeal unless there has been an abuse of discretion.  Id. at 974; see also Baxter, 941 F.2d at 453–54 (6th Cir. 1991).

2.  Parties' Arguments/Supplemental Filings

BCBSM says the complaint must be dismissed because Goldman has not exhausted his administrative remedies.  BCBSM essentially relies on the complaint, which fails to contain an allegation of exhaustion.  At oral argument, counsel further argued that BCBSM has both an internal and external appeals process, both of which must be completed before Goldman can bring a claim under ERISA.

Goldman says that because the policy/insurance contract contains no provision regarding a process for exhausting his administrative remedies, dismissal is not appropriate.  Goldman also argues that because of BCBSM's failure to set forth an administrative appeal process in the policy, it has not complied with ERISA, specifically 29 U.S.C. § 1133 (ERISA's administrative exhaustion section).  Goldman also says that exhaustion has been had during the pendency of this case and further exhaustion would be futile.

At the hearing, the Court directed BCBSM to provide documentation of the administrative appeals process, including the internal and external review as well as the legal support for the requirement of external review.  BCBSM filed supplemental exhibits

describing the administrative appeals process. Goldman filed a supplemental brief, contending that the external appeals process is not mandatory. BCBSM filed a response to Goldman's supplemental brief, contending that the law requires the external appeal process be followed before filing a claim under ERISA.

3. BCBSM Administrative Process Relating to Goldman

Here, while Goldman contends that there is no administrative process identified in the policy, it appears that he, through counsel, requested review of the denial of his claim after he filed this lawsuit. As such, he has participated in an administrative appeal process. As explained below, resolution of the exhaustion question has been complicated by the fact that Goldman pursued the administrative process after the filing of the complaint.[2]

The following events have taken place post-filing of the complaint.

First, on October 11, 2011, one month after the complaint was filed, Goldman's counsel wrote a letter to BCBSM, stating in part that Goldman "appeals the denial of claimed benefits."

On October 24, 2011, BCBSM wrote to Goldman's counsel regarding "Appeal request for Paul Goldman." The letter, signed by Laurie Wesolowicz, states in part:

> The drugs requested in the appeal process are included in our off-label review medication review program. We must receive medical documentation from the prescribing physician, including relevant medical chart notes, laboratory

---

[2] While the parties spend a good deal of time arguing over whether BCBSM complies with ERISA in terms of providing Goldman notice of his appeal rights, the more salient question is whether Goldman sufficiently exhausted those rights. While exhaustion has not been plead in the complaint, this defect can be cured. As noted at the hearing, Goldman is granted leave to amend the complaint, incorporating all of the events subsequent to the filing of his complaint in Count I.

values and other supporting documentation for each medication being requested. Following receipt of all requested information the appeals request will be reviewed by our physician consultant.

On October 28, 2011, BCBSM wrote to Dr. Frank Patino, presumably Goldman's physician, regarding Goldman. It requested Dr. Patino provide medical documentation, noting that authorization for Omnitrope "requires a diagnosis of growth hormone deficiency confirmed by laboratory testing . . . known indication for pituitary disease and multiple pituitary hormone deficiencies."

On November 7, 2011, Wesolowicz from BCBSM wrote to Goldman's counsel, stating in part:

> I understand that Diane Logston is currently reviewing your appeal for Omnitrope and DHEA. This letter (and the October 24, 2011 letter previously sent by me) is unrelated to that appeal. . . .

On November 23, 2011, Logston at BCBSM wrote to Goldman's counsel. The letter essentially denies Goldman's claim for Omnitrope on the grounds that it has not received sufficient medical evidence that Goldman needs the drug, noting that Dr. Patino did not supply any information. Regarding Goldman's appeal rights, the letter states:

> This is our final determination regarding your grievance. If you, as Mr. Goldman's authorized representative, disagree with our decision, you have the right to request an external review by the Michigan Commissioner of Financial and Insurance Regulation. If you choose to do so, follow the instructions indicated on the enclosed Health Care-Request for External Review form. . . .
> . . .
> **Or you have a right to bring a civil action under section 502(a) of the Employment Retirement Income Security Act of 1974**.

(Doc. 12-5, emphasis added).

Then, five (5) days later, on November 28, 2011, Logsdon of BCBSM again

7

wrote to Goldman's counsel. The letter states that it is to "correct an error regarding the description of your claims appeal process." Regarding Goldman's appeal rights, the letter states:

> This is our final determination regarding your grievance. If you, as Mr. Goldman's authorized representative, disagree with our decision, you have the right to request an external review by the Michigan Commissioner of Financial and Insurance Regulation. If you choose to do so, follow the instructions indicated on the enclosed Health Care-Request for External Review form. . . .
> . . .
> **Once you exhaust all your appeal rights (or they have been deemed to be exhausted) you may have the right to bring a civil action under section 502(a) of the Employee Retirement Income Security Act.**

(Doc. 12-4, emphasis added).

### 4. Resolution of Exhaustion Issue

While BCBSM insists that proper exhaustion includes completing both the internal review, which appears that Goldman has done, as well as the external review with the Michigan Commissioner of Financial and Insurance Regulation (Commissioner), the Court finds otherwise. First, the November 23 and November 28, 2011 letters do not state, as BCBSM contends, that review by the Commissioner is mandatory. The letters both state that Goldman "has the right" to request the external review and if he chooses to do so, he is given instructions. Neither letter says that he must seek review by the Commissioner before filing suit. The appeals procedure outlined in the letter is consistent with the document entitled "Your Benefit Guide" which BCBSM provided as a supplemental exhibit (Doc. 13-4). Under the section entitled "Your right to request review of an Adverse Benefit Determination," under the heading "Internal review procedure" it states:

> If you disagree with our final determination . . . you have the right to request an

> external review from the Commissioner of Financial and Insurance Regulation. The procedures for external review are explained below under the heading "Standard External Reviews." **In addition to the option of requesting external review**, **you also have the right to bring a civil action under section 502(a) of ERISA to obtain your benefits**.

(Doc. 13-4, page 44)[3]

> Similarly, under the heading "External reviews," it states:

> Once you have exhausted our standard internal grievance procedure, you or your authorized representative have the right to request an external review from the Commissioner. . ..
> . . .
> The Commissioner's decision is the final administrative remedy under the Patient's Right to Independent Review Act.

(Id. at p. 45)

As can be seen from the above, the external review process is an <u>option</u>, not a mandatory requirement, of administrative review. While BCBSM contends that the new federal health care law makes external review mandatory, the Court sees nothing in the exhibits filed by BCBSM which indicate that external review by a state agency is a prerequisite to filing an ERISA claim. While the new law, particularly 42 U.S.C. § 300gg-19, seems to require a health care provider, like BCBSM, provide both an internal and external review process, BCBSM has done so. It does not appear that the external review process <u>must</u> be completed before an individual has the right to sue under ERISA.

Another judge in this district concluded much the same in examining BCBSM's claims procedure. In <u>Potter v. Blue Cross Blue Shield of Michigan</u>, No. 10-14981, 2011

---

[3]The Benefit Guide does not have numbered pages. The page cited to is the page number appearing on the Court's electronic filing system.

U.S. Dist. LEXIS 92076 (E.D. Mich. July 14, 2011), BCBSM moved for summary judgment on the grounds that one of the named plaintiffs, Potter, failed to exhaust his administrative remedies.[4] The case involves BCBSM denial of coverage for a particular type of treatment for autism known as Applied Behavioral Analysis (ABA). Potter did not complete the internal review process, but argued in part that exhaustion would be futile based on BCBSM's repeated historical denials of ABA treatment as experimental. BCBSM countered that exhaustion would not be futile, noting that there have been decisions by the Commissioner requiring BCBSM to pay for ABA treatment. The district court rejected BCBSM's argument, stating in part:

> This argument misunderstands the exhaustion requirement and further demonstrates that exhaustion would be futile. Exhaustion requires only that claimant's complete BCBS's two-level _internal_ review procedure. An _external_ appeal t the [Commissioner] is voluntary, and claimants may forego such review and instead file an action in federal court . . . .

2011 U.S. Dist. LEXIS at *7. (emphasis in original). Overall, BCBSM has not convinced the Court that Goldman was required to pursue both the internal review and an external review to be deemed to have exhausted his administrative remedies under ERISA. Dismissal of Count I is not warranted.

### B. Preemption

BCBSM has argued that Goldman's breach of contract claim and breach of

---

[4]Interestingly, counsel for BCBSM in Potter explained the administrative exhaustion differently than counsel in this case, describing external review as an option. Counsel stated: "In order to exhaust the internal claims review process, a subscriber must file both level one and level two appeals. . . . After the second level review, **a subscriber may request an external review from the Office of Financial and Insurance Regulation ("OFIR") or initiate a civil action under ERISA § 502(a)**. See Doc. 14 in case no. 10-14981, at page 8-9 (emphasis added).

settlement agreement claims are preempted by ERISA. Goldman's argument is difficult to follow. He says that Counts II and III are "based on breach of the insurance contract itself and for breach of the settlement agreement in [Goldman I]"

As to the breach of contract claim, it clearly falls within ERISA's preemptive force. As a matter of law, ERISA completely preempts state law claims that "relate to any employee benefit plan." 29 U.S.C. § 1144(a). The term "relate to" is given broad meaning under ERISA. Metro. Life Ins. Co. v. Massachusetts, 471 U.S. 724, 732, 105 S.Ct. 2380, 85 L.Ed.2d 728 (1985); see also Briscoe v. Fine, 444 F.3d 478, 497 (6th Cir.2006) (noting that the Sixth Circuit applies ERISA preemption very broadly). Thus "[a] law 'relates to' an employee benefit plan ... if it has a connection with or reference to such a plan." Shaw v. Delta Air Lines, Inc., 463 U.S. 85, 86–87, 103 S.Ct. 2890, 77 L.Ed.2d 490 (1983). "[O]nly those state laws and state law claims whose effect on employee benefit plans is merely tenuous, remote or peripheral are not preempted." Cromwell v. Equicor–Equitable HCA Corp., 944 F.2d 1272, 1276 (6th Cir. 1991). The Sixth Circuit "has repeatedly recognized that virtually all state law claims relating to an employee benefit plan are preempted by ERISA." Id.; see also Nester v. Allegiance Healthcare Corp., 315 F.3d 610, 613 (6th Cir. 2003) ("[A]ny juridical complaint for recovery of any benefits allegedly due to the plaintiff under an employee benefit plan is strictly, and exclusively, governed by ERISA jurisprudence."). State law causes of action, including promissory estoppel, breach of contract, negligent misrepresentation, and breach of good faith, "are at the very heart of issues within the scope of ERISA's exclusive regulation and ... are preempted by ERISA." Cromwell, 944 F.2d at 1276 (holding that, even though "appellants filed suit in state court alleging ... promissory

11

estoppel, negligence, and breach of good faith," ERISA preempts these claims since they are at the "heart of issues within the scope of ERISA's exclusive regulation"); see also Pilot Life Ins. Co. v. Dedeaux, 481 U.S. 41, 48, 107 S.Ct. 1549, 95 L.Ed.2d 39 (1987) (holding that ERISA preempted plaintiff's common-law causes of action including tortious breach of contract, breach of fiduciary duties, and fraud in the inducement that arose from a denial of benefits under the insurance contract).

Here, the breach of contract claim relates directly to the policy/insurance contact and the current denial of prescription drug benefits for Omnitrope. Therefore, it is completely preempted as it is a claim for benefits due under an ERISA plan. Count II must be dismissed.

The breach of settlement claim under Count III is confusing. It appears that Goldman is not claiming that BCBSM failed to pay the amount due under the settlement agreement, but rather that it has "reneged" on its promises. The complaint, however, does not set forth any alleged promises. Count III states:

> 19. That the plaintiff filed suit against Defendant for similar relief as is set forth herein in Case No. 2:10-cv-14608-AC-MAR.
> 20. That as a result of that case, a settlement was agreed to as is contained in a certain settlement agreement signed by the Parties on May 11, 2010, a copy of same being in the possession of Defendant.
> 21. That as a result of a confidentiality provision in the agreement, it has not been attached hereto, but Plaintiff gives notice that request will be duly filed to permit disclosure of the agreement terms which the Defendant has breached.
> 22. That as a result of the breach of the settlement agreement Plaintiff has suffered damages.

These allegations simply do not satisfy Iqbal. As a result, it is not possible to discern whether Count III is preempted. To the extent that Goldman is claiming that BCBSM has "reneged" regarding its current denials of Omnitrope, such a claim is problematic

12

given the language in the settlement agreement that states it is not a guarantee of future payments and given that such a claim would likely be preempted. However, to the extent Goldman is claiming a breach of promises contained only in the settlement agreement, the claim could potentially go forward. Overall, Count III will be dismissed without prejudice, subject to Goldman's right to amend, if he chooses, to more particularly allege the promises breached in the settlement agreement.

Once Goldman files an amended complaint, the Case Manager will enter a scheduling order.

SO ORDERED.

       s/Avern Cohn  
       AVERN COHN  
       UNITED STATES DISTRICT JUDGE

Dated: January 24, 2012

I hereby certify that a copy of the foregoing document was mailed to the attorneys of record on this date, January 24, 2012, by electronic and/or ordinary mail.

       s/Julie Owens  
       Case Manager, (313) 234-5160