UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

PAUL GOLDMAN,

        Plaintiff,

v.

        Case No. 11-14043

        HON. AVERN COHN

BCBSM FOUNDATION d/b/a
BLUE CROSS BLUE SHIED OF
MICHIGAN FOUNDATION a/k/a
BLUE CROSS BLUE SHIELD OF
MICHIGAN,

        Defendant.

_____/

## MEMORANDUM AND ORDER GRANTING DEFENDANT'S MOTION TO DISMISS COUNT II OF THE FIRST AMENDED COMPLAINT (Doc. 20)[1]

I. Introduction

This is a case under the Employee Retirement Income Security Act, ERISA, 29 U.S.C. § 1132(a)(1)(B). Plaintiff Paul Goldman is suing defendant Blue Cross Blue Shield of Michigan (BCBSM)[2] claiming that it has wrongfully failed to pay for his prescription for Omnitrope.[3] The original complaint claimed (I) violation of ERISA, (II)

---

[1] Upon review of the parties' papers, the Court deems this matter appropriate for decision without oral argument. See Fed. R. Civ. P. 78(b); E.D. Mich. LR 7.1(f)(2).

[2] Plaintiff named "Blue Cross Blue Shield Michigan Foundation d/b/a/ Blue Cross Blue Shield of Michigan Foundation a/k/a Blue Cross Blue Shield of Michigan" as defendant. The parties have stipulated that "Blue Cross Blue Shield of Michigan, a Michigan corporation" is the proper defendant. (Doc. 24).

[3] Omnitrope is a form of human growth hormone. It can be used to treat adults with either adult onset or childhood onset growth hormone deficiency. See http://www.drugs.com/omnitrope.html (Last visited April 17, 2012).

breach of contract, and (III) breach of settlement agreement.

BCBSM filed a motion to dismiss the original complaint on the grounds that (1) plaintiff failed to exhaust his administrative remedies as to his ERISA claim under Count I, and (2) Counts II and III are preempted. The Court granted in part and denied in part the motion, leaving Count I, dismissing Count II, and dismissing without prejudice Count III subject to plaintiff's right to file an amended complaint pleading Count III with more particularity. (Doc. 18). Plaintiff then filed a first amended complaint containing an ERISA claim under Count I and a breach of settlement agreement claim under Count II.

Before the Court is BCBSM's motion to dismiss Count II of the first amended complaint on the grounds that the claim is preempted. For the reasons that follow, the motion is GRANTED. Count II is DISMISSED.

## II. Background[4]

Plaintiff Paul Goldman (Goldman) is an employee of Paul H. Goldman Associates, CPA, P.C. As an employee, Goldman participates in an employer medical plan, administered by BCBSM, and includes prescription drug coverage. The plan is alleged to be governed by ERISA.

At some point prior to November 2010, Goldman submitted a claim for payment of Omnitrope. BCBSM denied the claim.

On November 19, 2010, plaintiff then filed a complaint against BCBSM. Goldman v. BCBSM, 10-14608 (E.D. Mich.) (Goldman I). The complaint claimed (I) violation of ERISA, and (II) breach of contract. The parties settled without any motion

---

[4]This background is substantially taken from the Court's memorandum on BCBSM's first motion to dismiss. (Doc. 18 at p. 2-3).

2

practice on or about May 11, 2011.  On June 9, 2011, the Court entered a Consent Order of Dismissal.  Doc. 11 in Goldman I.

The settlement agreement was not filed in Goldman I.  However it is part of the record in this case.  The settlement agreement provides in part as follows:

1. BCBSM shall pay to Goldman the sum of thirty-five thousand dollars ($35,000.00) in full and complete settlement of the dispute over the payment of certain prescription claims made by Goldman through September 7, 2010 only.
2. For the payment of other/future prescription claims, BCBSM will follow the parameters set forth in Goldman's preferred Rx Program Certificate, as amended ("the insurance contract").  If the insurance contract is ever amended or superceded, the amended certificate/contract or superceding certificate/contract shall govern the payment of future prescription claims.  Prescription claims shall be paid as required by the contract and/or applicable law thereto.  This shall not be construed as a guarantee that claims for the certain prescribed drug shall be approved.

At some point after the signing of the settlement agreement, Goldman submitted another claim to BCBSM for Omnitrope Vial.  BCBSM denied the claim on June 16, 2011.  On September 15, 2011, Goldman filed this second action against BCBSM.

As noted above, BCBSM filed a motion to dismiss, which the Court granted in part and denied in part.  The motion now before the Court pertains to Count II of the first amended complaint, claiming breach of the settlement agreement.

### III.  Motion to Dismiss

A motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) tests the sufficiency of a complaint.  To survive a Rule 12(b)(6) motion to dismiss, the complaint's "factual allegations must be enough to raise a right to relief above the speculative level on the assumption that all of the allegations in the complaint are true." Bell Atlantic Corp. v. Twombley, 550 U.S. 544, 545 (2007).  See also Ass'n of Cleveland

Fire Fighters v. City of Cleveland, Ohio, 502 F.3d 545, 548 (6th Cir.2007). The court is "not bound to accept as true a legal conclusion couched as a factual allegation." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (internal quotation marks and citation omitted). Moreover, "[o]nly a complaint that states a plausible claim for relief survives a motion to dismiss." Id. at 679. Thus, "a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations. When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." Id. In sum, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim for relief that is plausible on its face." Id. at 678 (internal quotation marks and citation omitted).

IV. Analysis[5]

A.

Regarding plaintiff's breach of settlement agreement claim, the Court previously stated:

> The breach of settlement claim under Count III is confusing. It appears that Goldman is not claiming that BCBSM failed to pay the amount due under the settlement agreement, but rather that it has "reneged" on its promises. The complaint, however, does not set forth any alleged promises. Count III states:
> 19. That the plaintiff filed suit against Defendant for similar relief as is set forth herein in Case No. 2:10-cv-14608-AC-MAR.
> 20. That as a result of that case, a settlement was agreed to as is contained in a certain settlement agreement signed by the Parties

---

[5]For a discussion of ERISA preemption, see Doc. 18 at p. 10-12.

> on May 11, 2010, a copy of same being in the possession of Defendant.
> 21. That as a result of a confidentiality provision in the agreement, it has not been attached hereto, but Plaintiff gives notice that request will be duly filed to permit disclosure of the agreement terms which the Defendant has breached.
> 22. That as a result of the breach of the settlement agreement Plaintiff has suffered damages.
>
> These allegations simply do not satisfy <u>Iqbal</u>. Moreover, to the extent that Goldman is claiming that BCBSM has "reneged" regarding its <u>current</u> denials of Omnitrope, such a claim is problematic given the language in the settlement agreement that states it is not a guarantee of future payments. However, to the extent Goldman is claiming a breach of the settlement agreement based on other, as yet unalleged promises, the claim could go forward. Overall, Count III will be dismissed without prejudice, subject to Goldman's right to amend, if he chooses, to more particularly allege the promises breached in the settlement agreement.

(Doc. 18 at p. 12-13).

B.

Plaintiff's breach of settlement claim in Count II of the first amended complaint states in relevant part:

> 14. Plaintiff repeats and realleges paragraphs 1 through 13 as if fully set forth.
> 15. That the Plaintiff filed suit against Defendant for similar relief as is set forth herein in Case No. 2:10-cv-14608-AC-MAR.
> 16. That as a result of that case, a settlement agreement was reached with terms set forth in a certain settlement agreement (the Agreement) signed by the Parties on May 11, 2011, a copy of same being attached hereto and made a part hereof by reference (Exhibit A).
> 17. That the Agreement contains provisions that require BCBSM to pay for prescriptions in accordance with Goldman's Preferred RX Program Certificate, as amended (the insurance contract).
> 18. That the Agreement states as follows:
>> "2. For the payment of other/future prescription claims, BCBSM will follow the parameters set forth in Goldman's Preferred Rx Program Certificate, as amended (the insurance contract). If the insurance contract is ever amended or superseded, the amended certificate/contract or superseding certificate/contract shall govern the payment of future prescription claims. Prescription claims shall be paid as required by the contract and/or law applicable thereto. This shall not be construed as a guarantee that claims for prescribed drugs shall be approved.

5

> 19. That as consideration for the agreement contained in paragraph 18 above the Plaintiff agreed in the Agreement as follows:
> > "3. Goldman agrees to dismiss with prejudice Case No. 2:10-cv-14608-ACMAR.
> > The parties have agreed that the matter is being settled without costs or fees to any party."
> 20. **That Defendant has breached the Agreement by not paying for prescriptions as required by the Agreement and which are the subject of this cause**.
> 21. That as a result of the breach of the settlement agreement Plaintiff has suffered damages.

(Doc. 19, First Amended Complaint) (emphasis added).

C.

Plaintiff's amended Count II does not save his claim for breach of the settlement agreement from preemption. The only promise plaintiff alleges has been breached is found in paragraph 20. Paragraph 20 alleges that BCBSM has failed to pay for prescriptions required by the settlement agreement <u>and which are the subject of this cause</u>. This latter language alleges a breach of the settlement agreement based on BCBSM's <u>current</u> denial of Omnitrope. This claim is preempted as it is clearly based on a denial of current coverage which is governed by an ERISA plan and is the subject of Count I. Moreover, the settlement agreement specifically states it does not pertain to future claims for benefits; thus, plaintiff cannot base a breach of the settlement agreement as to those benefits.

D.

Realizing perhaps the peril of his position, plaintiff now argues that the settlement agreement created a "new agreement" between the parties – that BCBSM would adopt the " 'criteria' in the insurance contract and/or applicable state law." (Doc. 21, plaintiff's

6

response at p. 3). Plaintiff then argues that the settlement created a "conversion policy" which is wholly different from "employee benefit agreement under Count I." This argument is not well-taken.

First of all, the fact that plaintiff states that BCBSM's obligations flow from the "insurance contract" demonstrates the claim is preempted. As BCBSM points out, because plaintiff does not have a claim without reference to the insurance contract–which is the ERISA plan–his claim clearly "relates to" an ERISA plan and is therefore preempted. In other words, because in order for plaintiff to prevail on his claim that BCBSM breached the settlement agreement, the ERISA plan must be read. In this circumstance, the claim is preempted. See Zuniga v. Blue Cross Blue Shield of Michigan, 52 F.3d 1395, 1402 (6th Cir. 1995).

As to whether a conversion policy was created by the settlement agreement, an ERISA policy is converted when a "participant leaves the plan and obtains a new, separate, individual policy based on conversion rights contained in the ERISA plan." Waks v. Empire Blue Cross/Blue Shield, 263 F.3d 872, 876 (9th Cir. 2001). In cases where conversion occurs, the insured has exercised an express right to convert the policy and the right to convert is part of the original policy. See Waks, 263 F.3d at 874 ("[plaintiff] applied for individual coverage with [insurer] pursuant to the conversion rights of the group policy."); Demars v. CIGNA Corp., 173 F.3d 443, 444 (1st Cir. 1999) (finding state law claims not preempted by ERISA where plaintiff, after her employment ended, used her policy's "conversion clause" to "convert from group disability coverage to individual policies" at the end of her employment.); Powers v. United Health Plans of New England, Inc., 979 F. Supp. 64, 65 (D. Mass. 1997) (determining plaintiff's claims

not governed by ERISA where plaintiff "submitted a 'Conversion Application' to [insurer] for a 'non-group policy' "). State law claims arising out of a conversion policy are not preempted by ERISA because "once conversion has occurred and the policy is in force ... there is no longer any "integral connection" between the individual conversion policy and the ERISA plan that gave rise to the right to convert." Mass. Cas. Ins. Co. v. Reynolds, 113 F.3d 1450, 1453 (6th Cir. 1997) (quoting Mimbs v. Commercial Life Ins. Co., 818 F. Supp. 1556, 1562 (S.D. Ga. 1993)).

Here, the first amended complaint does not contain any allegations that (1) the settlement agreement created a conversion policy, (2) that the ERISA plan contains a procedure for conversion, (3) that those procedures were followed, (4) and that a new and separate policy was created different from the terms of the ERISA plan.

Indeed, the promise contained in settlement agreement, fairly read, simply states that BCBSM will continue to evaluate plaintiff's claims for Omnitrope in accordance with the requirements of the ERISA plan. In other words, BCBSM in the settlement agreement agreed to follow the terms of the ERISA plan in evaluating plaintiff's claims for prescription drug benefits. There is nothing in the first amended complaint, or settlement agreement, which shows the parties intended to convert the ERISA plan into an individual one. Count II is therefore preempted.[6]

SO ORDERED.

                                        S/Avern Cohn
                                        AVERN COHN
                                        UNITED STATES DISTRICT JUDGE

---

[6]In light of this decision, the Court need not address plaintiff's argument that BCBSM's motion is barred by Fed. R. Civ. P. 70, regarding enforcement of a judgment.

Dated: April 18, 2012

I hereby certify that a copy of the foregoing document was mailed to the attorneys of record on this date, April 18, 2012, by electronic and/or ordinary mail.

               S/Julie Owens
               Case Manager, (313) 234-5160