UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

PAUL GOLDMAN,

        Plaintiff,

Case No. 11-14043

v.

HON. AVERN COHN

BCBSM FOUNDATION d/b/a
BLUE CROSS BLUE SHIELD OF
MICHIGAN FOUNDATION a/k/a
BLUE CROSS BLUE SHIELD OF
MICHIGAN,

        Defendant.

_____/

### MEMORANDUM AND ORDER GRANTING DEFENDANT'S MOTION TO AFFIRM THE ADMINISTRATIVE RECORD (Doc. 32)

#### I. Introduction

This is a case seeking benefits under a plan governed by the Employee Retirement Income Security Act, ERISA, 29 U.S.C. § 1132(a)(1)(B). Plaintiff Paul Goldman (Goldman) is suing defendant Blue Cross Blue Shield of Michigan (Blue Cross)[1] claiming that it has wrongfully failed to pay for his prescription for Omnitrope. As will be explained, the only viable claim in the amended complaint is Count I which claims a violation of ERISA.

Before the Court is Blue Cross's motion to affirm the administrative record on the

---

[1] Plaintiff named "Blue Cross Blue Shield Michigan Foundation d/b/a/ Blue Cross Blue Shield of Michigan Foundation a/k/a Blue Cross Blue Shield of Michigan" as defendant. The parties have stipulated that "Blue Cross Blue Shield of Michigan, a Michigan corporation" is the proper defendant. (Doc. 24).

grounds its decision to deny Goldman's claim for reimbursement was proper because (1) Goldman failed to obtain prior medical authorization for the prescription and (2) Goldman failed to provide evidence that the drug was prescribed for a covered medical condition, i.e. medically necessary. For the reasons that follow, the motion will be granted.

## II. Procedural History[2]

This is Goldman's second lawsuit against Blue Cross. On November 19, 2010, Goldman filed a complaint against Blue Cross. Goldman v. BCBSM, 10-14608 (E.D. Mich.) (Goldman I). The complaint claimed (I) violation of ERISA, and (II) breach of contract. The complaint sought reimbursement for Goldman's prescriptions for Omnitrope but did not set forth the dates for the prescriptions or the amount sought. The parties settled without any motion practice on or about May 11, 2011. On June 9, 2011, the Court entered a Consent Order of Dismissal. Doc. 11 in Goldman I.

The settlement agreement was not filed in Goldman I. However Goldman submitted a portion of it in this case. The settlement agreement provided in part as follows:

1. BCBSM shall pay to Goldman the sum of thirty-five thousand dollars ($35,000.00) in full and complete settlement of the dispute over the payment of certain prescription claims made by Goldman through September 7, 2010 only.
2. For the payment of other/future prescription claims, BCBSM will follow the parameters set forth in Goldman's preferred Rx Program Certificate, as amended ("the insurance contract"). If the insurance contract is ever amended or superceded, the amended certificate/contract or superceding certificate/contract shall govern the payment of future prescription claims.

---

[2]Although the procedural history is not directly relevant to the Court's decision, it provides context for the instant dispute.

2

> Prescription claims shall be paid as required by the contract and/or applicable law thereto. This shall not be construed as a guarantee that claims for the certain prescribed drug shall be approved.

At some point after the settlement agreement, as will be further explained below, Goldman submitted another claim to Blue Cross for Omnitrope. Blue Cross denied the claim.

Goldman then filed a complaint against Blue Cross. The complaint claimed (I) violation of ERISA, (II) breach of contract, and (III) breach of settlement agreement.

Blue Cross filed a motion to dismiss on the grounds that (1) plaintiff failed to exhaust his administrative remedies as to his ERISA claim under Count I, and (2) Counts I and III are preempted. The Court granted in part and denied in part the motion, leaving Count I, dismissing Count II, and dismissing without prejudice Count III subject to Goldman's right to file an amended complaint pleading Count III with more particularity. (Doc. 18).

Goldman then filed a first amended complaint containing an ERISA claim under Count I and a breach of settlement agreement claim under Count II. Blue Cross filed a motion to dismiss Count II of the first amended complaint on the grounds that the claim is preempted. The Court granted the motion, leaving only Count I of the first amended complaint. (Doc. 26). .

Thereafter, Blue Cross filed the administrative record and the instant motion to affirm its decision which is the subject of Count I.

## II. Motion for Entry of Judgment

In <u>Wilkins v. Baptist Healthcare System, Inc.</u>, 150 F.3d 609 (6th Cir.1998), the Court of Appeals for the Sixth Circuit held that summary judgment procedures may no

3

longer be used in the Sixth Circuit in denial of benefits actions under ERISA. In Wilkins, the court of appeals decided a district court should adjudicate an ERISA action as if it were conducting a standard bench trial and, therefore, determining whether there is a genuine issue of fact for trial would make little sense. 150 F.3d at 618-19 (Gilman, J., concurring in part and setting out the judgment of the court of appeals on the issue regarding the summary judgment standard).

Accordingly, the Court will decide this matter under the guidelines set forth in Wilkins[3] by rendering findings of fact and conclusions of law, under the appropriate standard of review, based solely upon the administrative record.[4] See Eriksen v. Metropolitan Life Ins. Co., 39 F. Supp. 2d 864 (E.D. Mich. 1999).

---

[3] The court of appeals' "Suggested Guidelines" are as follows:
1. As to the merits of the action, the district court should conduct a de novo review based solely upon the administrative record, and render findings of fact and conclusions of law accordingly. The district court may consider the parties' arguments concerning the proper analysis of the evidentiary materials contained in the administrative record, but may not admit or consider any evidence not presented to the administrator.
2. The district court may consider evidence outside of the administrative record only if that evidence is offered in support of a procedural challenge to the administrator's decision, such as an alleged lack of due process afforded by the administrator or alleged bias on its part. This also means that any prehearing discovery at the district court level should be limited to such procedural challenges.
3. . . . the summary judgment procedures set forth in Rule 56 are inapposite to ERISA actions and thus should not be utilized in their disposition.
150 F.3d at 619.

[4] The administrative record was filed with the Court, Doc. 31, with later corrections. (Doc. 38). Citations to the administrative record will be "AR," followed by the corresponding numbered page. For example, page 75 of the administrative record will be cited as AR 75.

### III. Standard of Review

Blue Cross says that the standard of review in this case is de novo.[5] When applying a de novo standard of review, a court must "determine whether the administrator made a correct decision." Hoover v. Provident Life & Accident Ins. Co., 290 F.3d 801, 808–09 (6th Cir. 2002) (citing Perry v. Simplicity Eng'g, 900 F.2d 963, 966 (6th Cir. 1990)).

### IV. Findings of Fact

#### A. General

Goldman is an employee of Paul H. Goldman Associates, CPA, P.C. As an employee, Goldman participates in an employer medical plan, which is administered by Blue Cross. Goldman specifically participates in Blue Cross's Preferred RX Program, which is governed by ERISA. The details of the program, including information as to covered prescription benefits, are set forth in the AR in a document entitled "Preferred RX Program Certificate" (Certificate) and the Prescription Drug Rider to the Certificate (Rider).[6]

---

[5] The Michigan Office of Financial and Insurance Services (OFIS) promulgated Mich. Admin. Code Rules 500.2201-500.2202 and 550.111-550.112, which prohibit insurers from issuing, delivering, or advertising insurance contracts or policies that contain "discretionary clauses." In accordance with these rules, Blue Cross' certificate of insurance, which essentially comprises the benefit plan at issue, does not contain language calling for discretionary review of its benefit decisions. The Court of Appeals for the Sixth Circuit has upheld the OFIS's authority to make these rules as part of Michigan's ability to regulate insurance. See American Council of Life Ins. v. Ross, 558 F.3d 600 (6th Cir. 2009).

[6] The Certificate states that "we may add, limit, delete or clarify benefits by issuing a rider." (AR at 019).

### B. Relevant Certificate Provisions

The Certificate requires prior authorization in some circumstances. The provision is found in the Rider and states in part:

Mandatory Preauthorization

**Certain drugs require preauthorization. We will pay for each drug, each refill of a drug and select over-the-counter (OTC) drugs prescribed by a physician as follows:**

**When preauthorization of a prescription drug is required, authorization must be obtained from BCBSM <u>before</u> we will consider them for payment. If the required preauthorization is not obtained, we will deny payment and you will be responsible for 100 percent of the pharmacy charge.**

**We will pay our approved amount for select prescription drugs obtained from a pharmacy or panel mail order provider if both of the following are met:**

- **The prescribing physician requests preauthoriation and demonstrates that the drug meets BCBSM's preauthorization criteria**

- **We approve the request**

(AR at 42) (emphasis in original). Omnitrope is listed as one of the drugs that requires preauthorization. (AR at 136, 147).[7]

The Certificate sets forth the preauthorization criteria for coverage for Omnitrope, as follows:

> *Adults*. Diagnosis of growth hormone deficiency confirmed by laboratory testing (e.g. provocative stimulation), known indication for pituitary disease and multiple pituitary hormone deficiencies. Multiple stimulation tests may be required in

---

[7]Goldman states in his response that Blue Cross provided documents which show that in 2012 Omnitrope required preauthorization, contending that the record does not support the fact that preauthorization was required at the time Goldman filled the prescription for Omnitrope. Blue Cross later corrected the administrative record with documents showing that in 2010 and 2011 Omnitrope required preauthorization.

certain clinical circumstances. May be approved for AIDS-wasting cachexia and Turner's Syndrome. Growth hormone therapy is NOT covered for anti-aging, obesity or athletic enhancement.

(AR 136, 147).

### C. Goldman's Claim

At some point prior to November 2010, Goldman's physician wrote a subscription for Omnitrope.

Once a month, between October 2010[8] and June 2011 (eight months), Goldman filled the prescription. Because Goldman did not obtain preauthorization, he paid out of pocket for the prescriptions.

On June 15, 2011, Goldman submitted a "Prescription Drug Reimbursement Form" to a Blue Cross vendor, Medco, seeking reimbursement for the previously filled prescriptions, seeking $21,360.00. (AR 095-101).

On June 16, 2010, Medco, on behalf of Blue Cross, wrote a series of letters (apparently one for each time Goldman filled the prescription) to Goldman that "a coverage review is necessary to determine if this medication can be covered by your prescription drug plan." (AR 108-109, 111, 113, 115, 118, 120-121, 124, 126, 128). Goldman apparently considered this correspondence to be a denial of his claims fore reimbursement.

On October 11, 2011, Goldman appealed Blue Cross's decision regarding reimbursement for Omnitrope (AR 102-130).[9] As part of the appeal process, Goldman's

---

[8]As noted above, Goldman previously sued Blue Cross and reached a settlement as to prescription claims through September 2010.

[9]Goldman also appealed the denial of reimbursement for anther prescription drug, DHEA. Blue Cross denied coverage on the grounds the drug is investigational.

counsel attended a Managerial Level Conference with Blue Cross representative Diane Logsdon on October 21, 2011. (AR 068) At the conference, Logsdon explained that prior authorization is required in order for Omnitrope to be a covered benefit.

On October 28, 2011, Logsdon sent a letter to Goldman's physician, Dr. Frank Patino, with a copy to Goldman's counsel, requesting relevant medical records. (AR 071). The letter states in pertinent part:

> The member's prescription drug purchases of Omnitrope are under review for benefit eligibility. Authorization for Omnitrope requires a diagnosis of growth hormone deficiency confirmed by laboratory testing (e.g. provocative stimulation), known indication for pituitary disease and multiple pituitary hormone deficiencies. Multiple stimulation tests may be required in certain clinical circumstances.
>
> Please assist me by providing documentation including clinical notes and test results to substantiate whether or not Mr. Goldman meets the criteria shown. (AR 071).

When Blue Cross did not receive any medical records, Logsdon sent a second letter request on November 14, 2011. (AR 070). Goldman's counsel was sent a copy of the second request. Logsdon also wrote to Goldman's counsel on November 14, 2011, stating "[I] f we do not receive the documentation from Mr. Goldman's physician, our response [to the appeal] will be based on the records currently in our file." (AR 069). Neither Goldman nor his physician submitted any medical information to Blue

---

(AR 064-065). Blue Cross says that Goldman's appeal regarding this drug is not at issue. The Court agrees. Goldman, in response to Blue Cross's motion to affirm, says that he is challenging the denial of coverage for DHEA. In support, he cites paragraph ten of the complaint. Paragraph ten states in part that Goldman made a claim for "coverage of certain prescriptions received from a medical professional which are covered by the policy including but not limited to Omnitrope . . ." (Doc. 19 at p. 2, ¶ 10, emphasis added). The statement "including but not limited to" is wholly insufficient to state a plausible claim for relief based on Blue Cross's decision regarding DHEA. See Bell Atlantic Corp. v. Twombley, 550 U.S. 544, 545 (2007); Ashcroft v. Iqbal, 556 U.S. 662 (2009).

Cross regarding Goldman's need for Omnitrope.

On November 23, 2010, Blue Cross, through Logsdon, issued its final determination and denied Goldman's claim for reimbursement. The denial letter, sent to Goldman's counsel, states in part:

> We have completed review of the appeal you recently submitted in behalf of Mr. Goldman including the managerial-level conference conducted on October 21, 2011. As you know, during the past 30 days, I attempted to obtain information from the prescribing physician, Dr. Frank Patino, concerning the need for the drug omnitrope. However, I have not received any response from Dr. Patino. Based on the information provided to date, our position is unchanged. We are unable to allow benefits for the drugs under appeal, omnitrope and DHEA, because neither is a benefit under Mr. Goldman's contract.
> To clarify, omnitrope is a growth hormone. Under the terms of Mr. Goldman's contract, certain drugs require prior authorization to be covered. Coverage for omnitrope is provided for adults with a diagnosis of growth hormone deficiency confirmed by laboratory testing (e.g. provocative stimulation), known indication for pituitary disease and multiple pituitary hormone deficiencies. Multiple stimulation tests may be required in certain clinical circumstances. The drug may also be approved for AIDS-wasting cachexia and Turner's Syndrome. Growth hormone therapy is not covered for anti-aging, obesity or athletic enhancement. We have no information to support that Mr. Goldman meets the criteria for coverage of omnitrope. Therefore, we cannot authorize the drug.

A final denial letter, which contained different language regarding Goldman's appeal rights, was issued on November 28, 2011.

### V. Conclusions of Law

Blue Cross correctly denied Goldman's claim for reimbursement. The Certificate clearly provides that preauthorization is required for Omnitrope. As an initial matter, Goldman clearly failed to obtain prior approval inasmuch as he had the prescriptions filled and then requested reimbursement.

Regarding pre-authorization, Blue Cross requires proof that the drug is being used to treat certain conditions. Blue Cross informed Goldman of this requirement.

Blue Cross sent two requests to the prescribing physician, which went unanswered. Blue Cross had no choice but to deny coverage as it had no information to show that Goldman met the criteria for coverage.

Goldman argues that because he had a prescription for Omnitrope that he has shown the drug was medically necessary and met the criteria for coverage. This argument lacks merit. Putting aside that the authority cited for this proposition is inapposite,[10] it is not supported by the language of the Certificate which clearly spells out the requirements for Blue Cross to pay for Omnitrope. Goldman must do more than simply present a prescription; he had to supply proof that the prescription was written for a covered condition. Neither he nor his physician provided the necessary proof. Blue Cross acted in accordance with the Certificate when it denied Goldman's claim for reimbursement.[11]

### VI. Conclusion

For the reasons stated above, Blue Cross's motion to affirm is GRANTED. This

---

[10] Goldman cites United States v. Young, 2012 U.S. App. LEXIS 10952 (3d Cir. May 31, 2012), an unpublished state criminal case from Pennsylvania. In Young, the defendant pharmacist appealed his conviction on the grounds that the jury instructions were improper. Goldman relies on a portion of the jury instruction regarding a pharmacist's obligation to avoid filling improper prescriptions. It is obvious that the case has no relation as to Blue Cross's decision to interpret the terms of an ERISA governed plan document.

[11] At the hearing, Goldman suggested that the fact he settled his first case against Blue Cross, with Blue Cross ostensibly paying him for Omnitrope, means that subsequent prescriptions for Omnitrope would be covered. This argument is misguided. The settlement agreement clearly states that it only pertains to claims prior to September 7, 2010 and was not a guarantee of future coverage.

case is DISMISSED.

      SO ORDERED.


                                S/Avern Cohn  
                                AVERN COHN  
                                UNITED STATES DISTRICT JUDGE


Dated:  October 2, 2012


I hereby certify that a copy of the foregoing document was mailed to the attorneys of record on this date, October 2, 2012, by electronic and/or ordinary mail.

                                S/Julie Owens  
                                Case Manager, (313) 234-5160